1  WRIGHT, FINLAY & ZAK, LLP
   Nichole Glowin, Esq., SBN 262932
2  4665 MacArthur Court, Suite 280
   Newport Beach, CA  92660
3  (949) 477-5050; Fax: (949) 477-9200
   nglowin@wrightlegal.net
4

5  Attorneys for Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF
   MAIDEN LANE ASSET-BACKED SECURITIES I TRUST 2008-1, WITHOUT RECOURSE
6  SUCCESSOR LENDER BY MESNE TRANSFER FROM MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE
7  FUNDING, INC, A NEW YORK CORPORATION

8              UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA- LOS ANGELES DIVISION
10

| | |
|---|---|
| In re | ) |
| FERMIN P. CANLAS, | ) Chapter: 7 |
|     Debtor. | ) |
| | ) BK Case No.:  10-55468-TD |
| | ) Adversary Case No. 11-01126-TD |
| FERMIN P. CANLAS, an Individual, | ) |
|     Plaintiff, | ) **REQUEST FOR JUDICIAL NOTICE IN** |
| vs. | ) **SUPPORT OF NOTICE OF MOTION** |
| U.S. BANK NATIONAL ASSOCIATION, AS | ) **AND MOTION TO DISMISS** |
| TRUSTEE OF MAIDEN LANE ASSET- | ) **ADVERSARY COMPLAINT TO** |
| BACKED SECURITIES I TRUST 2008-1, | ) **DETERMINE THE NATURE, EXTENT** |
| WITHOUT RECOURSE SUCCESSOR | ) **AND VALIDITY OF LIEN AND TO** |
| LENDER BY MESNE TRANSFER FROM | ) **DISALLOW SECURED CLAIM, TILA** |
| MORTGAGE ELECTRONIC | ) **VIOLATION, FRAUD, LIBEL, QUIET** |
| REGISTRATION SYSTEMS, INC., AS | ) **TITLE, AND INJUNCTIVE RELIEF** |
| NOMINEE FOR GREENPOINT | ) |
| MORTGAGE FUNDING, INC, A NEW | ) Hearing Date:  April 7, 2011 |
| YORK CORPORATION; AZTEC | ) Hearing Time: 10:00 AM |
| FORECLOSURE CORPORATION; | ) Courtroom: 1345 |
| MORTGAGE ELECTRONIC | ) Location:  255 E. Temple Street |
| REGISTRATION SYSTEMS, INC. (MERS); | )           Los Angeles, CA 90012 |
| and all such persons claiming by, through, or | ) |
| under such person, all persons unknown, | ) |
| claiming any legal or equitable right, title | ) |
| estate, lien or interest in the property described | ) |
| in the complaint adverse to Plaintiff's title | ) |
| thereto; and DOES 1 through 100, inclusive, | ) |
|     Defendants. | ) |

-1-

---

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS ADVERSARY
COMPLAINT

1      Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF MAIDEN

2  LANE ASSET-BACKED SECURITIES I TRUST 2008-1, WITHOUT RECOURSE

3  SUCCESSOR LENDER BY MESNE TRANSFER FROM MORTGAGE ELECTRONIC

4  REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE

5  FUNDING, INC, A NEW YORK CORPORATION ("Defendant" or "US Bank"), hereby

6  respectfully requests that the Court take judicial notice of the following pursuant to Federal Rule

7  of Civil Procedure 201:

8      1.    On or about July 30, 2007, Plaintiff, for valuable consideration, executed a Note

9  in favor of Greenpoint Mortgage Funding ("Lender"), in the amount of $607,500.00, which was

10  secured by a Deed of Trust of even date recorded against the property located at 212 Gladys

11  Avenue, Monterey Park, California 91755 ("Property") in the Official Records for the County of

12  Los Angeles, on or about August 9, 2007, as Instrument No. 2007-1868558 ("Deed of Trust").[1]

13      2.    Thereafter, an Allonge to the Note was executed transferring all beneficial interest

14  in the Note and Deed of Trust from the Lender to EMC Mortgage ("EMC").[2]

15      3.    In February of 2009, Plaintiff defaulted under the terms of the Note and Deed of

16  Trust by failing to make her monthly mortgage payments thereunder. As a result, on or about

17  February 6, 2009, a Notice of Default and Election to Sell was recorded on the Property in the

18  Official Records for the County of Los Angeles, as Instrument No. 2009-166599 ("NOD").[3]

19      4.    To proceed with the foreclosure, on or about May 15, 2009, EMC executed and

20  recorded a Substitution of Trustee ("SOT"), which properly substituted the original Trustee

21  under the Note and Deed of Trust with Aztec Foreclosure Corporation ("Aztec").[4]

22      5.    When Plaintiff failed to cure the default, the substituted trustee under the Deed of

23  Trust, Aztec recorded a Notice of Trustee's Sale against the Property in the Official Records for

24

25  [1] A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and is incorporated herein by reference as though set forth in full.

26  [2] A true and correct copy of the Allonge to the Note is attached hereto as Exhibit "2" and is incorporated herein by reference as though set forth in full.

27  [3] A true and correct copy of the NOD is attached hereto as Exhibit "3" and is incorporated herein by reference as though set forth in full.

28  [4] A true and correct copy of the Sub of Trustee is attached hereto as Exhibit "4" and is incorporated herein by reference as though set forth in full.

1   the County of Los Angeles, on or about June 17, 2010, as Instrument No. 2010-831931

2   ("NTS").[5]

3          6.       Subsequently, on or about October 13, 2010. EMC executed an Assignment of

4   Deed of Trust, wherein they assigned all rights under the Note and Deed of Trust to Defendant,

5   US Bank ("Assignment").[6]  The Assignment was thereafter recorded in the Official Records for

6   the County of Los Angeles, on or about October 25, 2010, as Instrument No. 2010-1521738.[7]

7          7.       On or about October 18, 2010, the successor trustee under the Note and Deed of

8   Trust conducted a foreclosure sale on the Property ("Sale")[8] and Defendant US Bank purchased

9   the Property at the Sale.[9] The Sale was held in accordance with Section 2924 of the California

10  Civil Code under a power of sale clause contained in the Deed of Trust[10] and Defendant US

11  Bank duly perfected its title to the Property by recording a Trustee's Deed Upon Sale in the

12  Official Records for the County of Los Angeles, on or about October 25, 2010, as Instrument No.

13  2010-1521739 ("TDUS").[11]

14         8.       In order to prevent his eviction from the Property, on or about October 21, 2010,

15  Plaintiff filed a petition under Chapter 7 of the United States Bankruptcy Code thereby

16  commencing Case No. 10-55468 ("Bankruptcy Action").[12]

17  ///

18  ///

19  ///

20  ///

21  ///

22

---

23  [5] A true and correct copy of the NTS is attached hereto as Exhibit "5" and is incorporated herein by reference as though set forth in full.

24  [6] A true and correct copy of the Assignment is attached hereto as Exhibit "6" and is incorporated herein by reference a though set forth in full.

25  [7] Id.
    [8] See RJN at Exhibit 7, TDUS.

26  [9] Id.
    [10] See RJN at Exhibit 1, Deed of Trust.

27  [11] A true and correct copy of the TDUS is attached hereto as Exhibit "7" and is incorporated herein by reference as though set forth in full.

28  [12] A true and correct copy of the Bankruptcy Docket for the Bankruptcy Action is attached hereto as Exhibit "8" and is incorporated herein by reference as though set forth in full.

---

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS ADVERSARY
COMPLAINT**

1       9.      Plaintiff's Schedule A filed in the Bankruptcy Action shows that his primary

2 residence is listed at 212 Gladys Avenue, Monterey Park, California 91755.[13]

3

4                                   Respectfully submitted,

5                                   WRIGHT, FINLAY & ZAK, LLP

6

7 Dated: February 22, 2011       By:       /s/ Nichole Glowin

                                  Nichole Glowin, Esq.

8                                   Attorneys for Defendants, Attorney for Defendant,

                                  U.S. BANK NATIONAL ASSOCIATION, AS

9                                   TRUSTEE OF MAIDEN LANE ASSET-BACKED

                                  SECURITIES I TRUST 2008-1, WITHOUT

10                                   RECOURSE SUCCESSOR LENDER BY MESNE

11                                   TRANSFER FROM MORTGAGE ELECTRONIC

                                  REGISTRATION SYSTEMS, INC., AS

12                                   NOMINEE FOR GREENPOINT MORTGAGE

13                                   FUNDING, INC, A NEW YORK CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   [13] A true and correct copy of Plaintiff's Schedule A filed in the Bankruptcy Action is attached hereto as Exhibit "9" and is incorporated herein by reference as though set forth in full.

**This page is part of your document - DO NOT DISCARD**

**20071868558**

Pages:
027

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/09/07 AT 08:00AM

Fee: 88.00
Tax: 0.00
Other: 0.00
Total: 88.00

Title Company

**TITLE(S) :** _____

L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

☐☐☐☐ - ☐☐☐ - ☐☐☐☐          ☐☐☐☐

**THIS FORM IS NOT TO BE DUPLICATED**

— EXHIBIT ___



Recording Requested By:
GreenPoint Mortgage Funding,
Inc.
Return To:
GreenPoint Mortgage Funding,
Inc.
981 Airway Court, Suite E
Santa Rosa, CA 95403-2049




I certify this to be a true and
correct copy of the original
Great American Title

Prepared By:
GreenPoint Mortgage Funding,
Inc.
100 Wood Hollow Drive,
Novato, CA 94945

---[Space Above This Line For Recording Data]---

# DEED OF TRUST

MIN 100013800926840915

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 30, 2007 ,
together with all Riders to this document.
(B) "Borrower" is Fermin Canlas, A Married Man as his sole and separate
property

Borrower's address is 212 Gladys Avenue, Monterey Park, CA 91755
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is GreenPoint Mortgage Funding, Inc.

Lender is a Corporation
organized and existing under the laws of the State of New York

4091

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01

-6A(CA) (0207)01
Page 1 of 18

VMP Mortgage Forms, Inc.
Customized by GreenPoint Mortgage Funding, Inc.

Lender's address is 100 Wood Hollow Drive, Novato, CA 94945

(D) "Trustee" is Marin Conveyancing Corp.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated July 30, 2007
The Note states that Borrower owes Lender six hundred seven thousand five hundred and 00/100                                                                                                    Dollars
(U.S. $ 607,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2037.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | [x] 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |
| [x] Occupancy Rider | ☐ Interim Interest Rider | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

4091

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County        of        Los Angeles        :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
As more particularly described in exhibit "A" attached hereto and made a part hereof.

Parcel ID Number: 5258-005-099                     which currently has the address of
212 Gladys Avenue                                                          [Street]
Monterey Park                        [City], California 91755        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

4051

-6A(CA) (0207).01                     Page 3 of 15                     Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

4091

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in this manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and. Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

4091

VMP®-6A(CA) (0207).01                    Page 6 of 15                    Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

4091

-6A(CA) (0707)01                    Page 7 of 13                    Form 3005    1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

@-6A(WA) (0811.01)

Page 4 of 14

Form 3025   10/1

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

4091

 -6A(CA) (0207)01                    Page 9 of 16                    Form 3005   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

4091

 -6A(OA) (0207)01          Page 11 of 18          Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

4091

-6A(CA) (0207).01                    Page 12 of 15                    Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. This instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

4091

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Furman Canlas                  -Borrower

_____          _____ (Seal)
                                                                         -Borrower

_____ (Seal)   _____ (Seal)
                               -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                               -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                               -Borrower                                 -Borrower

                                                                    4091

-6A(CA) (0207).01                    Page 14 of 15              Form 3005   1/01

State of California
County of

On  July 31, 2007          before me,                              personally appeared

Fermin Canlas

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

LIZA P. MURILLO
Notary Public, State of Nevada
Appointment No. 04331201
My Appt. Expires Nov. 8, 2008

4091

-6A(CA) (0207)01          Page 18 of 18          Form 3005   1/01

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

AZTEC FORECLOSURE CORPORATION
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDED ON:   **February 6, 2009**

AS DOCUMENT NO:   09-166599  BK: / PG:

BY:   s/ Title Court Automation

LSI TITLE COMPANY (CA)

---

Space above this line for recorder's use only

Trustee Sale No. 09-507950EMC   Title Order No. 090058075

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This estimated amount is $17,963.81 as of February 5, 2009 and will increase until your account becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between

EXHIBIT "3"

T.S. #: 09-507950EMC    ORDER #: 090058075

you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Mortgage Electronic Registration Systems, Inc., as Nominee for EMC Mortgage Corporation, C/O Aztec Foreclosure Corporation, 3300 N. Central Ave., Suite 2200, Phoenix, AZ 85012, (602) 222-5711 or (800) 731-0850.

If you have any questions, you should contact a lawyer or the governmental agency, which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: Aztec Foreclosure Corporation is the duly appointed Trustee under a Deed of Trust dated 07/30/07, executed by Fermin Canlas, A Married Man, as trustor, to secure obligations in favor of Mortgage Electronic Registration Systems, Inc., as Nominee for GreenPoint Mortgage Funding, Inc., A New York Corporation, as Beneficiary recorded on August 9, 2007 in Instrument No. 20071868558 in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. Including the note(s) for the sum of $607,500.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE 10/01/08 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH ALL LATE CHARGES AND ANY DELINQUENT TAXES AND/OR INSURANCE PREMIUMS ADVANCED BY THE BENEFICIARY.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached declaration pursuant to CALIFORNIA CIVIL CODE §2923.5

DATE: February 5, 2009

AZTEC FORECLOSURE CORPORATION
As Agent for the beneficiary, by LPS Default Title and Closing, it's agent.

_____

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.5(b))*

CR-507950

Re:   EMC Loan No.: 0022537286
Name: CANLAS FERMIN
Property Address: 212 GLADYS AVE MONTEREY PARK, CA 91755
Trustee/ Attorney: AZTEC FORECLOSURE CORP
Beneficiary: U.S. Bank National Association, as Trustee of Maiden Lane Asset-Backed Securities I Trust 2008-1, without recourse

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐  The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒  The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐  The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

☐   The real property is not an owner-occupied single family residence.

☐   The loan was not originated between January 1, 2003 and December 31, 2007.

☐   The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

☐   The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

☐   The borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

EMC Mortgage Corporation

Date:   February 4, 2009        By:   *Jamie Johnson*

ATTACHMENT TO NOTICE OF DEFAULT

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

APN # 5258-005-099

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:    **$15.00**

RECORDED ON:    **May 15, 2009**

AS DOCUMENT NO:    **09-0723180**

BY:    **s/ Vanessa Martinez**

LSI TITLE COMPANY (CA)

---

Trustee Sale No. 09-507950EMC
Title Order No. 090058075
0022537286

Space above this line for recorder s use only

# SUBSTITUTION OF TRUSTEE

WHEREAS, **Fermin Canlas, A Married Man**, was the original Trustor, Marin Conveyancing Corp., was the original Trustee, and Mortgage Electronic Registration Systems, Inc., as Nominee for GreenPoint Mortgage Funding, Inc., A New York Corporation, was the original Beneficiary under that certain Deed of Trust dated July 30, 2007, **Recorded on August 9, 2007**, in Instrument No. 20071868558 of official records in the office of the Recorder of **LOS ANGELES** County, CA, and

WHEREAS, Mortgage Electronic Registration Systems, Inc. as nominee for Mortgage Electronic Registration Systems, Inc., as Nominee for EMC Mortgage Corporation, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes **Aztec Foreclosure Corporation, 3300 N. Central Ave., Suite 2200, Phoenix, AZ 85012**, as Trustee of Said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

EXHIBIT "4"

Substitution of Trustee
T.S. #: 09-507950
ORDER #: 090058075

DATE: _____2-16-09_____

Mortgage Electronic Registration Systems, Inc., as Nominee for EMC Mortgage
Corporation

_____

*Greg Allen - VP*
Title

STATE OF _____Mn._____ }
                                                              } ss
COUNTY OF _Dakota_____ }

On _2-16-09_ before me, _____James C. Morris_____, a Notary Public in and
for said State, Personally appeared _Greg Allen_____, who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JAMES C. MORRIS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

WHEN RECORDED MAIL TO:

Aztec Foreclosure Corporation
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE: __$24.00__

RECORDED ON: __June 17, 2010__

AS DOCUMENT NO: __10-831931__

BY: __s/ Cherie Valencia__
LSI TITLE COMPANY (CA)

---

Trustee Sale No. 09-507950 EMC
Title Order No. 090058075
APN 5258-005-099

Space above this line for recorder's use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 07/30/07.
UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY
BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF
THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

---

On **07/07/10** at **10:30 a.m.,** Aztec Foreclosure Corporation as the duly appointed
Trustee under and pursuant to Deed of Trust **Recorded on 08/09/07 in Instrument No.
20071868558 of official records in the Office of the Recorder of LOS ANGELES
County, California**, executed by: **Fermin Canlas, A Married Man,** as Trustor, EMC
Mortgage Corporation, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE
HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United
States, by cash, a cashier's check drawn by a state or national bank, a check drawn by
a state or federal credit union, or a check drawn by a state or federal savings and loan
association, savings association, or savings bank specified in section 5102 of the
Financial Code and authorized to do business in this state), at the west side of the Los
Angeles County Courthouse directly facing Norwalk Blvd., 12720 Norwalk Blvd.,
Norwalk, CA, all right, title and interest conveyed to and now held by it under said Deed
of Trust in the property situated in said County, California described as:
**212 GLADYS AVENUE, MONTEREY PARK, CA 91755**

The property heretofore described is being sold "as is".

The undersigned Trustee disclaims any liability for any incorrectness of the street
address and other common designation, if any, shown herein. Said sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed
of Trust, with interest thereon, as provided in said note(s), advances, if any, under the



EXHIBIT "5"

**T.S. #:**   09-507950 EMC
**ORDER #:**   090058075

terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: **$647,756.83**   (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

Requirements of SB1137 have been met pursuant to the Notice of Sale Declaration of record.

The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed.

DATE: June 8, 2010

Elaine Malone
Assistant Secretary & Assistant Vice President
Aztec Foreclosure Corporation

c/o 4665 MacArthur Court, Suite 250
Newport Beach,  CA 92660

Phone: (800) 731-0850 or (602) 222-5711
Fax: (847)627-8803

For Trustee's Sale Information
Call 714-730-2727
http://www.lpsasap.com
www.aztectrustee.com

Exhibit

## DECLARATION PURSUANT TO
## CALIFORNIA CIVIL CODE SECTION 2923.54

Pursuant to California Civil Code Section 2923.54, the undersigned loan servicer declares as follows:

1. It has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed; and

2. The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or Section 2923.55.

EMC Mortgage Corporation

By: _____

Name: ___Ann Thorn___

Title: ___First Vice President___

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE: __$21.00__

RECORDED ON: __October 25, 2010__

AS DOCUMENT NO: __10-1521738__

BY: __s/ Vanessa Martinez__

LSI TITLE COMPANY (CA)

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Nationstar Mortgage
350 Highland Dr.
Lewisville, Texas 75067

Trustee Sale No. 09-507950CXE
0596604306
Title Order No. 090058075
APN: 5258-005-099

Space above this line for recorder's use only

## ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR EMC MORTGAGE CORPORATION, IT'S SUCCESSORS AND ASSIGNS , as Assignor, by these presents does hereby grant, sell, convey, and transfer to U.S. Bank National Association, as Trustee of Maiden Lane Asset-Backed Securities I Trust 2008-1, without recourse all beneficial interest under that certain Deed of Trust dated 07/30/07, executed by Fermin Canlas, A Married Man, as Trustor(s); to Marin Conveyancing Corp., as Trustee; Mortgage Electronic Registration Systems, Inc., as Nominee for GreenPoint Mortgage Funding, Inc., A New York Corporation and Recorded on 08/09/07 as Instrument No. 20071868558 of official records in the Office of the County Recorder of LOS ANGELES County, CA together with the note(s), other obligations, and money due and to become due thereon, with interest, that are secured by the Deed of Trust described herein.

In witness whereof, the undersigned corporation has executed this Assignment of Deed of Trust by _Christine Odom_ its _vice president_ , who is duly authorized by a resolution of its board of directors to execute this assignment.

Continued on next page.................

EXHIBIT  "6"

T.S. #: 09-507950 CXE
0596604306
TITLE ORDER #: 090058075


DATED: __10/13/10__

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR EMC
MORTGAGE CORPORATION, IT'S SUCCESSORS AND ASSIGNS
__Christine Oda_____
By __Christine odom_____
It's __vice president_____


State of: __TEXAS_____

County of: __DALLAS_____


On __10/13/10__ before me, __Leroy Garcia_____, a Notary Public in and
for said State, Personally appeared __Christine Odom_____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY OF PERJURY under the laws of the State of __TEXAS_____ that the
foregoing paragraph is true and correct.


WITNESS my hand and official seal.

LEROY GARCIA
Notary Public, State of Texas
My Commission Expires
August 26, 2014

Signature __Leroy Garcia_____
             Notary

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL RECORDED IN THE OFFICE OF THE COUNTY

WHEN RECORDED MAIL TO:

RECORDING FEE: __**$18.00**__

RECORDED ON: __**October 25, 2010**__

Aztec Foreclosure Corporation
3300 N. Central Ave. Suite, 2200
Phoenix, AZ 85012

AS DOCUMENT NO: __**10-1521739**__

BY: __**s/ Vanessa Martinez**__

LSI TITLE COMPANY (CA)

MAIL TAX STATEMENTS TO:

Nationstar Mortgage
350 Highland Dr.
Lewisville, Texas 75067

---

Trustee Sale No. 09-507950 CXE
0596604306

Title Order No. 090058075

Space above this line for recorder's use

# TRUSTEE'S DEED UPON SALE

APN # 5258-005-099

The undersigned grantor(s) declare(s):

    1) The grantee herein was the foreclosing beneficiary.
    2) The amount of the unpaid debt together with cost was $736,878.04
    3) The amount paid by the grantee at the trustee sale was $620,000.00
    4) The document transfer tax is $0.00
    5) Said property is in the city of Monterey Park.

Aztec Foreclosure Corporation (whereas so designated in the Deed of Trust herein under more particularly described or as duly appointed Trustee), does hereby GRANT and CONVEY, but without covenant or warranty, express or implied, to U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF MAIDEN LANE ASSET-BACKED SECURITIES I TRUST 2008-1, WITHOUT RECOURSE successor lender by mesne transfers from Mortgage Electronic Registration Systems, Inc., as Nominee for GreenPoint Mortgage Funding, Inc., A New York Corporation (herein called Grantee), all right, title and interest in and to that certain property situated in the County of Los Angeles, State of California, and described as follows:

A CONDOMINIUM COMPRISED OF: PARCEL 1: AN UNDIVIDED 1/4 INTEREST IN AND TO PARCEL 1 OF PARCEL MAP NO. 24703, IN THE CITY OF MONTEREY PARK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 282 PAGE(S) 15 AND 16 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. EXCEPT THEREFROM CONDOMINIUM UNITS 1 TO 4 INCLUSIVE, AS SHOWN AND DEFINED UPON THE CONDOMINIUM PLAN RECORDED AUGUST 13, 1998 AS INSTRUMENT NO. 98-1427409, OFFICIAL RECORDS OF SAID COUNTY. PARCEL 2: UNIT 4, AS SHOWN UPON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL 1 ABOVE.

Which has a Purported Address of: 212 Gladys Avenue, Monterey Park, CA 91755

RECITALS:   This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust <u>Recorded on August 9, 2007</u>, in Instrument No. 20071868558 of official records in the Office of the Recorder of <u>LOS ANGELES</u> County, California, and



EXHIBIT "7"

T.S. #: 09-507950 CXE
TITLE ORDER #: 090058075

executed by: **Fermin Canlas, A Married Man, as Trustor,** under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust and pursuant to the Notice of Default and Election to Sell under the Deed of Trust described above.  Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on **October 18, 2010.** Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being **$620,000.00** in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of sale Trustee's Sale.

Date: October 18, 2010

Aztec Foreclosure Corporation

_Elaine Malone_

Elaine Malone
Assistant Secretary & Assistant Vice President


STATE OF ARIZONA    }
                                       } ss
COUNTY OF MARICOPA    }

On October 18, 2010 before me, _____, a Notary Public in and for said county, personally appeared Elaine Malone, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____    (Seal)

Jan 2, 2011

NoFeeRequired

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
### Bankruptcy Petition #: 2:10-bk-55468-TD

*Date filed:*  10/21/2010

*Assigned to:* Thomas B. Donovan
Chapter 7
Voluntary
No asset

| | |
|---|---|
| **Debtor**<br>**Fermin P Canlas**<br>212 Gladys Ave<br>Monterey Park, CA 91755<br>626-307-1832<br>SSN / ITIN: xxx-xx-0302<br>*aka*<br>**Fermin Canlas** | represented by **Gary L Harre**<br>Global Capital Law PC<br>17612 Beach Blvd Ste 8<br>Huntington Beach, CA 92647<br>714-907-4182<br>Fax : 714-907-4175<br>Email: ghcmecf@gmail.com |
| **Defendant**<br>**Aztec Foreclosure Corporation**<br>c/o CT Corporation System<br>818 West 7th St<br>Los Angeles, CA 90017 | represented by **Aztec Foreclosure Corporation**<br>PRO SE |

**Trustee**
**Howard M Ehrenberg (TR)**
SulmeyerKupetz
333 South Hope Street, 35th Floor
Los Angeles, CA 90071
(213)626-2311

*U.S. Trustee*
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 10/21/2010 | 1 | Chapter 7 Voluntary Petition . Receipt Number o, Fee Amount $299 Filed by Fermin P Canlas Notice of available chapters due 11/4/2010. Cert. of Credit Counseling due by 11/4/2010. Exhibit D due 11/4/2010. Incomplete Filings due by 11/4/2010. (Ghaltchi, Dina) (Entered: 10/22/2010) |

EXHIBIT "8"

| 10/22/2010 | 2 | Meeting of Creditors with 341(a) meeting to be held on 11/26/2010 at 04:30 PM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 01/25/2011. (Ghaltchi, Dina) (Entered: 10/22/2010) |
|---|---|---|
| 10/22/2010 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Fermin P Canlas . (Ghaltchi, Dina) (Entered: 10/22/2010) |
| 10/22/2010 | 4 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Ghaltchi, Dina) (Entered: 10/22/2010) |
| 10/22/2010 | | Receipt of Chapter 7 Filing Fee - $299.00 by 12. Receipt Number 20097569. (admin) (Entered: 10/25/2010) |
| 10/24/2010 | 5 | BNC Certificate of Notice (RE: related document(s) 2 Meeting (Chapter 7)) No. of Notices: 13. Service Date 10/24/2010. (Admin.) (Entered: 10/24/2010) |
| 10/24/2010 | 6 | BNC Certificate of Notice (RE: related document(s) 1 Voluntary Petition (Chapter 7) filed by Debtor Fermin P Canlas) No. of Notices: 1. Service Date 10/24/2010. (Admin.) (Entered: 10/24/2010) |
| 10/24/2010 | 7 | BNC Certificate of Notice (RE: related document(s) 4 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 1. Service Date 10/24/2010. (Admin.) (Entered: 10/24/2010) |
| 10/28/2010 | 8 | Continuance of Meeting of Creditors Filed by Trustee Howard M Ehrenberg (TR). 341(a) meeting to be held on 11/29/10 at 04:30 PM at RM 102, 725 S Figueroa St., Los Angeles, CA 90017. (Ehrenberg (TR), Howard) (Entered: 10/28/2010) |
| 11/04/2010 | 9 | Exhibit D , Notice of available chapters Filed by Debtor Fermin P Canlas (RE: related document(s) 1 Voluntary Petition (Chapter 7)). (Fentroy, Rita) (Entered: 11/08/2010) |
| 11/04/2010 | 10 | Certificate of Credit Counseling Filed by Debtor Fermin P Canlas (RE: related document(s) 1 Voluntary Petition (Chapter 7)). (Fentroy, Rita) (Entered: 11/08/2010) |
| 11/04/2010 | 11 | Request for special notice Filed by Debtor Fermin P Canlas . (Fentroy, Rita) (Entered: 11/08/2010) |
| | | Continuance of Meeting of Creditors Filed by Trustee Howard M Ehrenberg (TR). 341(a) meeting to be held on 12/13/10 at 03:30 PM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. |

| 11/30/2010 | 12 | (Ehrenberg (TR), Howard) (Entered: 11/30/2010) |
|---|---|---|
| 11/30/2010 | 13 | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by. (Ehrenberg (TR), Howard) (Entered: 11/30/2010) |
| 12/14/2010 | 14 | Notice of continued meeting of creditors and appearance of debtor (11 USC 341(a)) Filed by. (Ehrenberg (TR), Howard) (Entered: 12/14/2010) |
| 12/14/2010 | 15 | Continuance of Meeting of Creditors Filed by Trustee Howard M Ehrenberg (TR). 341(a) meeting to be held on 12/28/10 at 11:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. (Ehrenberg (TR), Howard) (Entered: 12/14/2010) |
| 12/28/2010 | 16 | Amended Schedule C Filed by Debtor Fermin P Canlas . (Lazarte, Val ) (Entered: 01/04/2011) |
| 01/04/2011 | | Chapter 7 Trustee's Report of No Distribution: I, Howard M Ehrenberg (TR), having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 3 months. Assets Abandoned (without deducting any secured claims): $ 4300.00, Assets Exempt: Not Available, Claims Scheduled: $ 196174.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 196174.00. Filed by Trustee Howard M Ehrenberg (TR) (RE: related document(s) 15 Continuance of Meeting of Creditors Filed by Trustee Howard M Ehrenberg filed by Trustee Howard M Ehrenberg (TR)). (Ehrenberg (TR), Howard) (Entered: 01/04/2011) |
| | | Adversary case 2:11-ap-01126. Complaint by Fermin P Canlas against U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF MAIDEN LANE ASSET-BACKED SECURITIES I TRUST 2008-1, WITHOUT RECOURSE SUCCESSOR LENDER BY MESNE TRANSFER FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, Aztec Foreclosure Corporation, MORTGAGE |

| | | |
|---|---|---|
| 01/14/2011 | <u>17</u> | ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), All persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse, DOES 1-100, Inclusive. (Fee Not Required). Nature of Suit: (01 (Determination of removed claim or cause)),(13 (Recovery of money/property - 548 fraudulent transfer)),(21 (Validity, priority or extent of lien or other interest in property)) (Harre, Gary) (Entered: 01/14/2011) |
| 01/15/2011 | <u>18</u> | Substitution of attorney Filed by Debtor Fermin P Canlas. (Harre, Gary) (Entered: 01/15/2011) |
| 01/27/2011 | <u>19</u> | Summons Service Executed on Aztec Foreclosure Corporation 1/27/2011 (Harre, Gary) (Entered: 01/27/2011) |
| 02/10/2011 | <u>20</u> | Emergency motion *of Debtor To Enforce Automatic Stay Against U.S. Bank National Association, Nationstar Mortgage, and Blaise Bryant, as Agent of Nationstar Mortgage; Request For Order To Show Cause Re Sanction* Filed by Debtor Fermin P Canlas (Attachments: # <u>1</u> Exhibit 1 Notice of Trustee Sale# <u>2</u> Exhibit 2 Notice of Chapter 7 Bankruptcy Case# <u>3</u> Exhibit 3 Deed of Trust# <u>4</u> Exhibit 4 Notice to Quit# <u>5</u> Exhibit 5 Notice of Unlawful Detainer# <u>6</u> Exhibit 6 Complaint for Unlawful Detainer and Damages# <u>7</u> Exhibit 7 Postings# <u>8</u> Exhibit 8 Request for Entry of Default# <u>9</u> Exhibit 9 Notice to Vacate# <u>10</u> Exhibit 10 Notice of Stay of Proceedings) (Harre, Gary) (Entered: 02/10/2011) |
| 02/10/2011 | <u>21</u> | Declaration re: *Movant Fermin P. Canlas Support of Emergency Motion of Debtor To Enforce Automatic Stay Against U.S. Bank National Association, Nationstar Mortgage, and Blaise Bryant, as Agent Of Nationstar Mortgage; Request For Order To Show Cause Re Sanction.* Filed by Debtor Fermin P Canlas (RE: related document(s) <u>20</u> Emergency motion *of Debtor To Enforce Automatic Stay Against U.S. Bank National Association, Nationstar Mortgage, and Blaise Bryant, as Agent of Nationstar Mortgage; Request For Order To Show Cause Re Sanction*). (Harre, Gary) (Entered: 02/10/2011) |
| | | Declaration re: *Attorney Gary Harre's Support of Emergency Motion of Debtor To Enforce Automatic Stay Against U.S. Bank National Association, Nationstar Mortgage, and Blaise Bryant, as Agent of Nationstar Mortgage; Request For Order To Show Cause Re Sanction.* Filed by Debtor Fermin P Canlas (RE: related document(s) <u>20</u> Emergency motion *of Debtor To Enforce Automatic Stay Against U.S. Bank National Association, Nationstar Mortgage, and Blaise Bryant, as Agent of Nationstar Mortgage; Request For Order To Show Cause Re Sanction*). |

| 02/10/2011 | 22 | (Harre, Gary) (Entered: 02/10/2011) |
|---|---|---|
| 02/11/2011 | 23 | Proof of service *Addendum to add new address for an existing Creditor* Filed by Debtor Fermin P Canlas (RE: related document (s) 20 Emergency motion *of Debtor To Enforce Automatic Stay Against U.S. Bank National Association, Nationstar Mortgage, and Blaise Bryant, as Agent of Nationstar Mortgage; Request For Order To Show Cause Re Sanction*). (Harre, Gary) (Entered: 02/11/2011) |
| 02/17/2011 | 24 | Order Denying Debtor's Ex Parte emergency motion to enforce automatic stay and request for order to show cause (Related Doc # ) Signed on 2/17/2011 (Toliver, Wanda) (Entered: 02/17/2011) |
| 02/19/2011 | 25 | BNC Certificate of Notice - PDF Document. (RE: related document(s) 24 Order (Generic)) No. of Notices: 2. Service Date 02/19/2011. (Admin.) (Entered: 02/19/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/22/2011 15:24:05 | | |
| **PACER Login:** wf0265 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 2:10-bk-55468-TD Fil or Ent: filed To: 2/22/2011 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** 3 | **Cost:** | 0.24 |

B6A (Official Form 6A) (12/07)

In re _____FERMIN CANLAS_____,                    Case No. _____
              Debtor                                                      (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| A PLANNED UNIT DEV. 212 GLADYS AVE. MONTEREY PK. CA. 91755 | RETAIN | H | 590 K | 640 K |
| | | | | |

Total ▶ | 590 K
(Report also on Summary of Schedules.)

# EXHIBIT "9"